**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Frank THOMPSON, D. O.,**
**Defendant-Appellant.**

**No. 79–5510.**

United States Court of Appeals,
Fifth Circuit.

Aug. 22, 1980.

Robert B. Maloney, Frances J. Maloney, Dallas, Tex., for defendant-appellant.

Shirley Baccus-Lobel, Asst. U. S. Atty., Dallas, Tex., for plaintiff-appellee.

Before TJOFLAT, POLITZ and HATCHETT, Circuit Judges.

HATCHETT, Circuit Judge:

Frank Thompson, an osteopathic physician, was convicted on all counts of a six-count indictment charging him with unlawfully dispensing a controlled substance, not in the usual course of professional practice for a legitimate medical purpose. 21 U.S.C. § 841(a)(1). He claims that the indictment fails to charge an offense within the terms of the applicable statute, and that it is multiplicitious. We affirm.

At the time of the alleged offenses, Thompson was registered under Title 21 of the United States Code, the Comprehensive Drug Abuse and Control Act of 1970, and practicing medicine in Dallas, Texas. On March 8, 1979, an investigator for the Texas Board of Pharmacy visited Thompson's office under an assumed identity. The investigator represented himself as needing treatment for congestion and a cough. While being examined by Thompson, the investigator requested that the examination cease so that he could discuss obtaining preludine prescriptions. Thompson responded that he could not prescribe the drug unless the patient was overweight, to which the investigator responded: "Ain't I overweight Doctor?" Thompson responded that he was, and wrote the investigator a prescription for thirty preludine pills. The investigator was charged $75 for the office visit. He was neither questioned regarding any history of being overweight nor cautioned about the use of the drug.

On March 15, 1979, the same investigator returned to Thompson's office, requesting an additional preludine prescription. Thompson responded that it was "too soon," and no prescription was issued. The investigator returned on April 12, 1979, requesting more preludine, and some extras, if possible. Thompson conducted no examination but issued three preludine prescriptions, one in the investigator's assumed name and two in false names supplied by the investigator. Thompson was paid $200 directly, and $75 was paid to the receptionist.

The investigator returned on April 17, 1979, to obtain a prescription for $500 worth of preludine. Thompson refused, explaining that things were getting "too hot."

Then, on April 26, 1979, the investigator returned and was successful in obtaining three preludine prescriptions for which he paid Thompson $300 and received a bill from the receptionist for $20.

On May 14, 1977, the investigator returned requesting more prescriptions. Thompson issued one preludine prescription and responded that this would be the last, as he was trying to get out of the business.

Preludine, a stimulant used for weight control, affects the nervous and cardiovascular systems. The evidence indicates that one pill sells for $10 to $15 on the street. A government witness, an osteopathic physician, testified that the longest period for which preludine should be issued is six weeks. Before prescribing the drug, a physician must, at least, ascertain a medical history of allergies, heart trouble, high blood pressure, central nervous system trouble, and an evaluation of the thyroid gland, lungs, and blood pressure. No weight loss after the initial thirty day period renders the drug ineffective for the patient for whom it is prescribed. The drug is normally issued in conjunction with diet restrictions.

Another trial witness testified that he had been issued prescriptions on various occasions by Thompson for persons neither seen nor examined.

■ Appellant's first contention is that he was improperly charged with having unlawfully "dispensed" preludine when he should have been charged with "distributing" the drug. "[A]n indictment must specify the crime which is to be proved . . . the conduct alleged must be an offense against the law, and . . . one may not be charged with one crime and convicted of another." *United States v. Leigh*, 487 F.2d 206, 207-8 (5th Cir. 1973).

The crux of the appellant's argument is that, under 21 U.S.C. § 802(10), the term "dispense" applies to the delivery of a controlled substance pursuant to a lawful order

of a practitioner.[1] Since a lawful order of the practitioner is specified, a physician who is registered under the Act cannot be indicted for dispensing a controlled substance, but can only be indicted for distributing. The statutory intent of Title 21 of the United States Code, according to Thompson, is that only an unregistered physician can be indicted for dispensing unlawfully.

Precedent in this circuit establishes that, under Title 21 of the Code, a doctor who administers or prescribes a controlled substance in an unlawful manner is to be indicted for dispensing it rather than distributing it. *U. S. v. Leigh.* Thompson's argument fails, therefore, as his interpretation of the applicable statute does not comport with Fifth Circuit authority.[2]

■ The appellant's next allegation of error is that the indictment is multiplicious. Multiplicity is the charging of a single offense in several counts. *United States v. Chrane*, 529 F.2d 1236 (5th Cir. 1976).

Counts one through three of the indictment charge the appellant with violations resulting from the issuance of three prescriptions on April 12, 1979. Counts four through six charge the appellant with violations resulting from the issuance of three prescriptions on April 26, 1979. He was sentenced to four years imprisonment on count one, a consecutive term of two years imprisonment on count two, and fined $10,000 on count three. He was also sentenced to four years imprisonment on each of counts four through six—those sentences to run concurrently to the terms of imprisonment on count one. A special parole term of four years was also imposed.

According to Thompson, because the three prescriptions issued on April 12, 1979, were issued at the same time and to the same person, only one offense occurred. The same argument is advanced with respect to counts four through six. Thompson points out that 21 U.S.C. § 841 contains no statement evidencing an intent on the part of Congress to make each prescription issued a separate offense and therefore separately punishable. In connection therewith, Thompson asks that we invoke the doctrine of lenity for the proposition that the issuance of each prescription should not have constituted a separate offense.

■ Lenity is a tool of statutory construction. When Congress fails to clearly indicate the allowable unit of prosecution with clarity, doubt as to congressional intent is resolved in favor of lenity for the accused. *Simpson v. United States*, 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978). In *Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955), we find the Supreme Court's most lucid articulation of the rule of lenity. In that case, the defendant was charged in separate counts under the Mann Act (18 U.S.C. § 2421) with a single interstate transportation of two women for purposes of prostitution. The defendant appealed from a sentence of two years and six months on each of the two counts. Because of doubt as to whether Congress made the simultaneous transportation of more than one woman in violation of the Mann Act subject to cumulative punishment for each woman transported, the Supreme Court opined:

[W]hen Congress leaves to the judiciary the task of imputing to Congress an un-

---

1. 21 U.S.C. § 802 provides, in pertinent part:
(10) The term "dispense" means to deliver a controlled substance to an ultimate user or research subject by, or pursuant to the lawful order of, a practitioner, including the prescribing and administering of a controlled substance and the packaging, labeling, or compounding necessary to prepare the substance for such delivery. The term "dispenser" means a practitioner who so delivers a controlled substance to an ultimate user or research subject.

(11) The term "distribute" means to deliver (other than by administering or dispensing) a controlled substance. The term "distributor" means a person who so delivers a controlled substance.

2. Even if we were to decide that "distributing" is the proper phrase to charge the offense, Thompson would suffer no prejudice by the mistake. He was adequately informed of the detail of the charge that he would have to meet, and he could not be tried a second time on that set of circumstances.

declared will, the ambiguity should be resolved in favor of lenity . . . if Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses.

*Id.* at 83–4, 75 S.Ct. at 622.

■ The doctrine of lenity is not operative in the present case. The statute under which the appellant was indicted and convicted is reasonably interpreted as making each unlawful dispensation a distinct offense. In this case, the appellant wrote three separate prescriptions on each of the two dates, by which he caused six separate dispensations of a controlled substance. *Bell* is sufficiently distinguishable in that the essence of the offense committed by the defendant in that case was the transportation; there was no congressional indication regarding whether more than one offense was involved in a single transportation under the Mann Act. Here, the essence of the offense is the dispensations; there was one dispensation for each prescription issued. Moreover, "Congress has manifested an attitude, not of lenity but of severity toward violation of the narcotics laws." *Gore v. United States*, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958).

Because we find six distinct dispensations, we conclude that the government need not have elected the counts in the indictment on which it would proceed, nor do we find that the offenses merged for sentencing purposes.

In light of the foregoing discussion, we find the appellant's challenges to the indictment under which he was convicted without merit. All other contentions are likewise without merit. Accordingly, we affirm.

AFFIRMED.