IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
May 2000 Session

## STATE OF TENNESSEE v. CHRISTOPHER BENGTSON

**Direct Appeal from the Criminal Court for McMinn County**
**Nos. 97-612, 97-613, 97-614     R. Steven Bebb, Judge**

**No. E1999-01190-CCA-R3-CD**
**October 2, 2000**

The defendant, Christopher Bengtson, was convicted by a McMinn County jury of three counts of reckless endangerment committed with a deadly weapon, a Class E felony. In this appeal as of right, the defendant raises two issues: (1) whether the evidence was sufficient as a matter of law to support the verdict; and (2) whether the trial court erred in failing to merge the three counts into one. We conclude that the evidence was sufficient as a matter of law for the jury to conclude beyond a reasonable doubt that the defendant was guilty of felony reckless endangerment. We agree with the defendant and the State that the three counts constituted a single course of conduct and should have been merged into one. We therefore affirm the felony reckless endangerment conviction for count one of the indictment but vacate the convictions for counts two and three.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed in Part, Vacated in Part**

ALAN E. GLENN, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

Julie A. Rice, Contract Appellate Defender (on appeal); Charles M. Corn, District Public Defender; and William C. Donaldson, Assistant Public Defender (at trial) for the appellant, Christopher Bengtson.

Paul G. Summers, Attorney General and Reporter; R. Stephen Jobe, Assistant Attorney General; Jerry N. Estes, District Attorney General; and Richard C. Newman, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The defendant, Christopher Bengtson, was indicted by a McMinn County Grand Jury in October 1997 on three counts of aggravated assault. A jury convicted him on January 12, 1999, of three counts of the lesser-included offense of reckless endangerment committed with a deadly

weapon, a Class E felony. He was sentenced as a Range I, standard offender to two years on each count, with sentences to be served concurrently, on probation, after sixty days in jail.

The defendant, in this appeal as of right, raises two issues for our review:

I.   Whether the evidence was sufficient as a matter of law to support the verdict; and

II.  Whether the trial court erred in refusing to dismiss counts two and three of the indictment as they were part and parcel of one act.

Having reviewed the entire record, we conclude that the evidence adduced at trial was sufficient as a matter of law to convict the defendant of felony reckless endangerment. As to the defendant's second issue, we agree that the three convictions should have been merged into one. Therefore, we affirm the conviction for reckless endangerment with a deadly weapon of Katherine Martin in count one but vacate the convictions for counts two and three.

## **FACTS**

The evidence presented at trial shows that the defendant, a then thirty-five-year-old former Marine from Minnesota, moved in May of 1996 to Riceville, Tennessee, and was employed as a factory worker in Etowah. The defendant testified that he was also a bounty hunter as a "pasttime [sic], as a hobby."[1] He lived in a trailer home off County Road 701 not far from the residence of James Wyatt, one of the three victims. The defendant received a bounty hunting assignment from Bill Henry of Bill Henry Bonding to apprehend Vance Martin, a friend of James Wyatt. The defendant's contact with Bill Henry was through Chad Swafford, who was associated with Henry in the bonding business.

On the evening of September 15, 1997, based on information that Vance Martin was staying at the residence of James Wyatt, the defendant set out for the Wyatt home. He did not approach the residence immediately but used his standard technique of starting at another nearby residence and loudly claiming to be hunting for his lost dog, empty dog chain in hand. Wyatt apparently came outside of his residence and the defendant assumed that Wyatt was Martin because the two men fit similar physical descriptions. The defendant proceeded to follow his practice of shaking hands and then putting a hold on that "pinches their finger and it hurts very bad." The defendant then twisted Wyatt's arm into an elbow lock, and after securing both of his hands behind his back, put them in handcuffs. The dog chain then was hooked through the handcuffs and wrapped around Wyatt's left

---

[1]Bounty hunting in Tennessee is defined and regulated by Tennessee Code Annotated Section 40-11-318. The law went into effect on May 18, 1998, and therefore does not apply here. The defendant's offense was committed on September 16, 1997. According to this new law, "[n]o person who has been 'convicted of a felony' shall serve as a bounty hunter in the state of Tennessee." Tenn. Code Ann. § 40-11-318(b) (Supp. 1999).

-2-

thigh with the leather handle in the defendant's hand. In this way, the defendant walked Wyatt to a Mr. Zip store some quarter of a mile away, only to discover, after calling Swafford, that he had apprehended the wrong person. The defendant testified that Wyatt was fine about what had happened and even offered him a beer. Apparently Wyatt was not "fine," and later in the evening stopped the defendant, who had returned to Mr. Zip's, threatening him and telling the defendant to stay away from him and that he now knew where the defendant lived.

On the following morning, September 16, 1997, the defendant thought he saw Martin riding a motorcycle and called Swafford to let him know and to get Swafford to call the sheriff's deputies. The defendant also asked Swafford to lend him a police dog, which Swafford refused to do, and then to lend him a shotgun, which Swafford agreed to do. The defendant claimed to need protection from Wyatt.

Later that same day, around noon, the defendant returned to the Wyatt residence, this time with a loaded shotgun. The defendant claimed that he was returning to Wyatt's house just to identify the motorcycle he had seen, and that he had given up the hunt for Martin. Nevertheless, the defendant parked his truck down the road from Wyatt's residence and walked up the road, not only with the shotgun but with the bounty papers for Martin. The defendant was sitting on the porch of a neighbor's residence, talking, when he saw a car pull into the driveway at Wyatt's residence.

What happened next is highly disputed. Nevertheless, it is undisputed that the passengers in the car included Wyatt and Mr. and Mrs. Martin, the parents of Vance Martin. The elder Martins were taking Wyatt to retrieve clothes from his house because Wyatt, himself in trouble with law, no longer felt safe there.

The defendant's version of the events is one in which he seeks to calm Mrs. Martin, assuring her that he is not there to cause any trouble, while holding the shotgun in a benign, "port arms" position. The elder Martins related a dramatically different version, one in which the defendant waved the shotgun at them, profanely shouted at them to get out of the car, and demanded, "Where's he at, I want him."

Corporal Joe Guy with the McMinn County Sheriff's Department testified that he was called to the Wyatt residence at the time the above events were taking place. Guy arrived alone, in uniform and in a squad car. He testified further to the following:

> As I turned up on County Road 701 off of 725 I could see there was a field that was behind that trailer, and I could [see] up to the residence there where the parties were standing, and I could see then that there was a gentleman there with a shotgun, or with a weapon, and so I turned my vehicle up and pulled up in the driveway. I parked at an angle. I wasn't sure what I had exactly and I parked at an angle to protect myself from anything that might go on, I really didn't know what was happening. The gentleman still had the weapon pointed at

the other three subjects that were standing in the area there between the car and the house. I ordered the subject to drop his weapon. I drew my weapon. Again I didn't know exactly what was going on. The first two or three times I ordered him to drop the shotgun he didn't do anything. Finally the third time he dropped the weapon and I approached him and secured the weapon.

## ANALYSIS

### I. Sufficiency of the Evidence

The defendant argues that the evidence presented in its entirety and as contained in the record is insufficient to support the verdict of the jury, finding him guilty of reckless endangerment committed with a deadly weapon.

In considering this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense charged beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). See also State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App.), perm. app. denied (Tenn. 1992); Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App.), perm. app. denied (Tenn. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 405 S.W.2d 768, 771 (Tenn. 1966) (citing Carroll v. State, 370 S.W.2d 523 (Tenn. 1963)). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that, on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

The defendant was convicted by a jury of reckless endangerment committed with a deadly weapon. Reckless endangerment is defined in Tennessee Code Annotated Section 39-13-103 in the following way:

> **Reckless endangerment.** — (a) A person commits an offense who recklessly engages in conduct which places or may place another person in imminent danger of death or serious bodily injury.
> (b) Reckless endangerment is a Class A misdemeanor; however, reckless endangerment committed with a deadly weapon is a Class E felony.

The defendant argues that the State failed to prove that he recklessly engaged in conduct that "places or may place another person in imminent danger of death or serious bodily injury," because what he did only involved "handling or pointing a loaded gun with the safety on in the vicinity of three people" and did not create any danger of death or serious bodily injury. In support of his argument, the defendant relies on two Tennessee cases. He cites State v. Fox, 947 S.W.2d 865 (Tenn. Crim. App. 1996), pointing to the fact that in Fox the defendant actually fired a weapon and this court dismissed the conviction, while the defendant here only held a weapon with the safety on. The analogy to Fox is misplaced. The reckless endangerment with a deadly weapon charge in Fox was dismissed because there were no people anywhere near at the time of the discharge of the gun "into the air or up into a tree top." 947 S.W.2d at 866. The Fox opinion turned on the fact that the statute required that the offender engage in conduct which places or may place another person in imminent danger of death or serious bodily injury and there was no "person." That is not the case here, where the defendant pointed a loaded shotgun at a group of three people. In State v. Payne, 7 S.W.3d 25, 28 (Tenn. 1999), our supreme court, considering "imminent" as it applied to a reckless endangerment charged, looked to Black's Law Dictionary 750 (6th ed. 1990), which defines the term as ". . . impending; on the point of happening; threatening; menacing; perilous." Referring to the holding of this court in Fox, the court then noted that "for the threat of death or serious bodily injury to be 'imminent,' the person must be placed in a reasonable probability of danger as opposed to a mere possibility of danger." Payne, 7 S.W.3d at 28. Taken in the light most favorable to the State, the victims in the case at hand clearly were within the zone of danger as set forth and defined in Payne.

The defendant also relies on State v. Wilson, 924 S.W.2d 648 (Tenn. 1996), where the defendant had fired shots into a house, not knowing whether anyone was inside. The reckless felony endangerment conviction in Wilson was sustained both by this court and on appeal to our supreme court. The aggravated assault convictions in Wilson were dismissed on appeal because the State had failed to prove that the defendant acted knowingly and intentionally. The State here was not required to prove that the defendant acted knowingly, only recklessly. The defendant's reliance on Wilson is misplaced.

Viewed in a light most favorable to the State, the defendant was still determined to capture Martin when he returned, on September 16, 1997, to the Wyatt residence. The defendant had taken

care to hide his presence, had bounty papers with him, and carried a loaded shotgun. The three individuals he ordered out of the car that day did not include Vance Martin but, instead, included Wyatt, a man he had already mistakenly handcuffed and forced to accompany him, and the parents of the man he was hunting. It was these individuals he confronted with a shotgun, angrily, aggressively, demanding and threatening, asserting that he knew they could lead him to the elusive Martin. Corporal Guy saw the defendant pointing a shotgun at this group of three individuals and gained control of the situation only after repeatedly ordering the defendant to drop his weapon. We conclude that the evidence was sufficient for the jury to conclude beyond a reasonable doubt that the defendant created a "reasonable probability of danger" for the victims and, thus, was guilty of felony reckless endangerment.

## II. Consolidation of Counts

The State agrees that the three convictions for felony reckless endangerment should be merged into one. In State v. Davis, 654 S.W.2d 688, 696 (Tenn. Crim. App.), perm. app. denied (Tenn. 1983), this court stated that, where a statute prohibits a "course of conduct" as opposed to individual acts, there can be only one conviction. In specifically addressing reckless endangerment offenses, this court has noted that "the fact that the reckless endangerment statute speaks in terms of a person recklessly engaging in conduct indicates that a course of conduct, comprised of several acts, would constitute the offense." State v. Ramsey, 903 S.W.2d 709, 713 (Tenn. Crim. App. 1995) (finding only one reckless endangerment offense where defendant's reckless speeding endangered passengers in two other vehicles).

We conclude that the evidence was sufficient for the jury to conclude beyond a reasonable doubt that the defendant recklessly pointed a loaded shotgun, angrily and aggressively, demanding and threatening, at these victims and in such a manner that there was an imminent danger of death or serious bodily injury to those victims.

## CONCLUSION

Our review of the entire record leads us to conclude that the evidence was sufficient as a matter of law to convict the defendant of felony reckless endangerment of Katherine Martin, and we, therefore, affirm the conviction. Having also concluded that the defendant could legally be convicted of only one count of felony reckless endangerment, the remaining two convictions are vacated.

 

 

_____
ALAN E. GLENN, JUDGE