**STATE of Tennessee, Appellee,**

v.

**Lucy M. HUNT, Guess What, Inc., Appellants.**

Court of Criminal Appeals, at Jackson.

July 14, 1983.

Order on Petition to Rehear Aug. 8, 1983.

Order on Supplement to Petition to Rehear Aug. 18, 1983.

Permission to Appeal Denied by Supreme Court Nov. 7, 1983.

Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, Michael F. Pleasants, Memphis, for appellants.

N. Alan Lubin, Tommy H. Jagendorf, Memphis, for Hunt.

Charles Boyle, Atlanta, Ga., for Guess What, Inc.

William M. Leech, Jr., Atty. Gen., Jennifer Helton Small, Asst. Atty. Gen., Nashville, Kathleen O. Spruill, James Beasley, Asst. Dist. Attys. Gen., Memphis, for appellee.

## OPINION

TATUM, Judge.

This is a case under the present Tennessee obscenity statutes (T.C.A. § 39–6–1101, et seq.). The first indictment, B–82306, charged the defendant Lucy M. Hunt in two separate counts with knowing distribution of two obscene films—a film entitled "Virgin Ass" and an untitled color film depicting other sexual conduct. Guess What, Inc., was charged in two additional counts of that indictment with knowing possession with the intent to distribute the above-mentioned films. Defendant Hunt was convicted of both of these counts and was sentenced to 60 days in jail on each count. Defendant Guess What, Inc., was convicted of both counts and was fined $15,-000.00 on each count. However, the record reflects that these two films were sold in a single transaction, so the trial judge merged the two convictions against each defendant. Hence, only one judgment was entered against each defendant under indictment B–82306.

Defendant Hunt was charged in another indictment, B–82307, of knowing distribution of two additional obscene films, "Breakfast in Bed" and "Orange Blossom Summer." The distribution of these films was charged in separate counts. Hunt was also charged with the knowing distribution of an obscene magazine, "Shaved Dolls" in another count of the indictment. Defendant Guess What, Inc., was charged in separate counts of knowing possession with the intent to distribute obscene material which were the above-mentioned films and magazine. The jury found both defendants not guilty regarding the film "Breakfast in Bed" and the magazine "Shaved Dolls." However, both defendants were found guilty of their respective charges relating to "Orange Blossom Summer." As a result, Hunt was sentenced to 60 days in jail and Guess What, Inc., was fined $15,000.00.

In another indictment, B–82316, Hunt was charged and found guilty of distributing an obscene magazine, "No. 1 Prive." She was sentenced on that charge to 60 days in jail. Guess What, Inc., was convicted in another count of possession with intent to distribute that magazine and fined $15,000.00. Both defendants were found to be not guilty to charges in a fourth indictment, B–82305. As to the punishment imposed, all of Hunt's sentences were to run concurrently. The fines imposed against Guess What, Inc., were imposed cumulatively on each indictment which resulted in a total fine of $45,000.00. The convictions

under each indictment represented separate sales.

In the first issue, the defendants state that the trial court erred in charging the jury with T.C.A. § 39–6–1117. The defendants state that this jury charge negated testimony of a defense expert witness who testified concerning the scientific value of the material.

The expert was Dr. Eugene E. Levitt, a clinical psychologist who is the director of psychology in the Department of Psychiatry at the University of Indiana School of Medicine. It appears that he also practices clinical psychology. Dr. Levitt testified that he had viewed the materials for which the defendants were convicted of distributing. He testified that similar materials are prescribed in treating persons with "sexual disfunction." This type material sexually stimulates these patients. He also testified that similar material was sometimes used in teaching human sexuality to undergraduate college students at Indiana University. This material was useful in demonstrating sexual activity to the students. The films and magazines demonstrated sexual intercourse, fellatio, cunnilingus, oral sexual activity, masturbation, homosexual female sexuality, and other activities.

The witness testified that such explicit materials would best be used for educational purposes under the supervision of a teacher and that treatment of patients with such materials should be "in a clinical setting with control." Dr. Levitt testified that he would classify nothing as obscene that is found in an adult bookstore or in a private home, or at any other place where "no one needs to go." He emphasized that the material had scientific value for the treatment of sexual disorders and in teaching courses in human sexuality.

T.C.A. § 39–6–1117, of which the defendants complain, was charged to the jury, is as follows:

"39–6–1117. Persons and institutions exempt from provisions.—There shall be exempt from the provisions of this chapter:

(1) Any public library which is entirely or partially supported by public funds;

(2) Any recognized and established educational institutions and the libraries therein;

(3) Any recognized and established museum;

(4) Any recognized and established historical society;

(5) Any licensed practitioner of the healing arts, medical clinic or hospital while engaged in a professional capacity;

(6) Any governmental agency;

(7) Any governmental sponsored organization;

(8) Any other nonprofit association or entity which is engaged in the collection and preservation of historic or religious documents; and

(9) Any person, employee or agent acting in an official capacity for such organization."

█ The defendants insist that since the materials were purchased in their adult bookstore, and that they did not claim an exemption under T.C.A. § 39–6–1117, that the code section should not have been charged. We find that the testimony of Dr. Levitt warranted the charge. The use made of similar materials by Dr. Levitt for education and scientific purposes was authorized by subsections (2) and (5) of the exemption statute. It was relevant for the jury to be apprised that the scientific uses postulated by Dr. Levitt were given specific protection from prosecution. This instruction provided an appropriate guideline for the jury in examining whether the material had protected uses or whether their sale was unprotected "commercial exploitation of obscene material." See *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). The instruction in no way impeached the veracity of the testimony of Dr. Levitt; it did no more than fully acquaint the jury with the law of the case. There is no merit in this issue.

█ The defendants next complain that the trial judge improperly refused to instruct the jury in accordance with their special request number 14. This issue was waived because it was not included in the

defendants' motion for a new trial. *State v. Simerly,* 612 S.W.2d 196 (Tenn.Cr.App. 1980); *State v. Pennington,* 573 S.W.2d 755 (Tenn.Cr.App.1978); Rule 36(a), T.R.A.P.

■ The defendants assert that the definition of obscenity under T.C.A. § 39–6–1101(5) is vague and indefinite. They also assert that Article I, Section 19 of the Tennessee Constitution may be interpreted as granting absolute protection of speech and press which would forbid any regulation of pornography. Our Supreme Court has held that this particular section of the statute to be constitutional. *Taylor v. State, ex rel. Kirkpatrick,* 529 S.W.2d 692, 696 (Tenn.1975). Our Supreme Court having addressed this issue, its determination is conclusive and binding on this court and all other inferior courts of this State. *Barger v. Brock,* 535 S.W.2d 337, 340 (Tenn.1976). As a result of these holdings and *Leech v. American Booksellers Association, Inc.,* 582 S.W.2d 738, 745 (Tenn.1979), we see no reason to extend an interpretation of Article I, Section 19 of the Tennessee Constitution to forbid the regulation of pornography.

■ The defendants complain that the exemption of certain persons and institutions from the provisions of the obscenity statutes is unconstitutional. T.C.A. § 39–6–1117, above quoted, exempts certain persons and institutions from the provisions of the obscenity statute. The defendants attack this exemption as being overbroad and an unconstitutional classification. They claim that this statute violates the equal protection clause and the due process clause. We disagree.

This statute was adopted after our Supreme Court struck down an earlier exemption provision in the Tennessee Obscenity Act of 1978. *Leech v. American Booksellers Association, Inc., supra,* at 755. That exemption provision was constitutionally vague since the exempt status was tied to whether an entity was taxed or not. That framework was "too nebulous, too lacking in definite limits, and too vague to inform men of common intelligence who was included and who is exempt from the criminal penalties ..." of that particular act.

T.C.A. § 39–6–1117 is not tied to the admittedly obscure question of tax status. Under this statute specific institutions are recognized and delineated as exempt from the act. The legislature has supplied to us in this provision a readily identifiable class that is to be exempt from the obscenity statutes.

■ The defendants say that this exemption is overbroad and thereby violates equal protection in that it provides total immunity to exempted groups regardless of the use of the material, the amount distributed, or the context in which it is used. Our general assembly is not prohibited from exempting certain individuals and institutions from the provisions of its statutes as long as it has a rational basis of doing so and if the exemption is not imposed arbitrarily. *State v. Nashville, Chattanooga and St. Louis Railroad,* 124 Tenn. 1, 135 S.W. 773 (1911). T.C.A. § 39–6–1117 has a rational basis in exempting certain persons and institutions from obscenity violations in view of serious literary, artistic, and scientific achievements which may occur from those groups. The exemption was not imposed arbitrarily and is equally applicable to all persons or institutions in the exempted class. Such an exemption furthers "important governmental objectives ... (and is) substantially related to the achievement of those objectives." *Orr v. Orr,* 440 U.S. 268, 279, 99 S.Ct. 1102, 1111, 59 L.Ed.2d 306, 319 (1979); *Mitchell v. Mitchell,* 594 S.W.2d 699 (Tenn. 1980).

This statute is not overbroad because of the specific delineation of the individuals of whom are exempted. Those within the exempted class are treated equally and it is a valid exercise of the police power of the State to grant certain exemptions from the operation of general laws. 16A., C.J.S., *Constitutional Law,* § 465. We find no real or substantial overbreadth here that would violate the Federal Constitution. See *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *City of Chattanooga v. McCoy and Combs,* 645 S.W.2d 400 (Tenn.1983). Likewise, there is no improper classification of those individu-

als who are exempt. This is not analogous to the situation of *Wheeler v. Maryland,* 281 M.D., 593, 380 A.2d 1052 (1977), where a statute differentiated between bookstore employees and motion picture employees. The exempt class under our statutes bears a rational relationship towards a legitimate government interest of protecting activity which may be obscene in certain specific instances.

We adopt the holdings of *State v. Shearon Davis and Guess What, Inc.,* 654 S.W.2d 688 (Tenn.Cr.App.1983) which found that although the term "recognized and established" under this statute is not absolutely precise, this lack of precision in itself was not offensive to the requirements of due process. *Roth v. United States,* 354 U.S. 476, 491, 77 S.Ct. 1304, 1312, 1 L.Ed.2d 1498 (1957). We agree that this statute is not so vague as to be a violation of due process of law. We find that the exemptions set forth in the above-mentioned statute are not overbroad or improperly classed. The statute is constitutional.

■ We further adopt the holdings of *Shearon Davis, supra* with regard to the constitutionality of the punishment provisions of T.C.A. § 39–6–1104(e) and (f). Both provisions, which allow distinct punishments for A and B classes of offenders, do not violate the equal protection clause or the due process clause. These portions of the statute provide that:

"(e)(1) For purposes of this subsection, a Class A violator shall be any person sentenced under the provisions of subsection (d) who distributes obscene books, magazines, newspapers, pictures, drawings, photographs or other printed or written material when such obscene material represents twenty-five percent (25%) or less of the stock-in-trade, and inventory, and sales of such violator during any given twenty-four (24) hour period. A Class B violator shall be any other person sentenced under the provisions of subsection (d) who is not defined as a Class A violator. Upon application for sentencing as a Class A violator, as defined above, such violator shall have the burden of proving his classification.

(2) The sentences imposed in subsection (d) of this section shall be mandatory for a Class B violator, and no Class B violator sentenced under the provisions of such subsection shall be eligible for suspension of sentence and probation, release on parole, or any other program whereby such person enjoys the privilege of supervised or unsupervised release into the community or whereby such person is released, permanently or temporarily, prior to the expiration of his sentence, including, but not limited to, participation in any programs authorized by §§ 41–21–208 or 41–21–227. Provided, further, no Class B violator sentenced under subsection (d) of this section shall receive good, honor or incentive time credit towards the expiration of such sentence as authorized by §§ 41–21–212, 41–21–214 or 41–21–228; nor shall such sentence expire in any other manner until it has been entirely served day for day.

(f) Any corporation or entity doing business in the state of Tennessee which violates the provisions of this section shall, upon conviction, be fined an amount of not less than ten thousand dollars ($10,000) nor more than fifty thousand dollars ($50,000)."

In response to similar argument, our court found that this statute indeed had a rational relationship to a legitimate government interest and was not just arbitrary. *Shearon Davis, supra* held:

"Our Supreme Court has upheld the power of the general assembly to distinguish among the degrees of wrongdoing under a particular statute and to punish violators according to the extent to which their conduct deviates from the social norm. In *State v. Hinsley,* 627 S.W.2d 351, 355 (Tenn.1982), our Supreme Court upheld the constitutionality of our habitual drug offender statute which punished more severely drug dealers 'whose conduct causes a more serious threat to our society' than the conduct of only users. Such a classification was held to bear a rational relationship to legitimate governmental in-

terests in the deterrence of the traffic in illicit drugs.

In this case the Legislature has chosen to single out those offenders who deal more heavily in obscene material and subject them to more severe judgment punishment. Under the statute, the breakpoint between Class A and Class B violators is 25% of the stock in trade, inventory and sales of the violator during any given 24-hour period."

The defendants assert that the distinction between A and B offenders derived from the percentage of obscene matter of which the business is composed, is purely arbitrary. To support their position, they cite *City of Duluth v. Sarette,* 283 N.W.2d 533 (Minn.1979), which held an exemption provision to be arbitrarily imposed which excluded from prosecution organizations that received at least one-third of their support from publicly donated funds. That provision was arbitrary and without any rational basis because it was not readily apparent why any organization receiving more than one-third of its support from publicly donated funds would be more likely to have a legitimate need to disseminate obscene materials than one receiving a lower percentage of support from the public. That is not an analogous situation to the separate classification of offenders based upon the percentage of obscene materials that they have in their business. The 25% figure is not an arbitrary amount in that it will insure that the offenders who deal primarily in obscene materials will be subjected to more severe punishment than those who do so only as a small incidental portion of their business.

■ We further hold that the punishment section of T.C.A. § 39–6–1104(e) and (f) does not unconstitutionally distinguish between those who sell obscene printed matter and those who sell obscene movies. This section must be read *in pari materia* with T.C.A. § 39–6–1101(4) which defines obscene "matter" to include motion picture films. By utilizing this definition, we do not interpret this statute to distinguish between printed matter and movies. We also hold that the perimeters of the Class A and

Class B offenders are sufficiently well defined for the courts to fairly administer the law.

The defendants in our case also challenge T.C.A. § 39–6–1104(f) which subjects corporate defendants to a fine. On this question we again adopt the language of *Shearon Davis, supra,* which held:

"The appellants complain that because the term 'entity' is not defined, the statute is unconstitutionally vague. However, the proof clearly revealed that Guess What, Inc., is a corporation and the statute specifically addresses 'any corporation.' The corporate appellant has no standing to complain of any shortcomings of this code section as it might be applied to some other business entity. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). It is not a proper function of appellate courts to envision in advance of application all possible contingencies of attempted prosecution under a criminal statute and declare which are constitutional and which are not. *State v. King,* 635 S.W.2d 113, 114 (Tenn.1982), citing *Watson v. Buck,* 313 U.S. 387, 402, 61 S.Ct. 962, 967, 85 L.Ed. 1416 (1941). T.C.A. § 39–6–1104(e)(1)(2) and (f) are constitutional in every respect, and this issue and the subissues have no merit."

We hold that the provisions of each one of the statutes questioned by the defendants are constitutional.

■ In their final issue, the defendants assert that the material upon which their convictions rest, is not obscene as a matter of law. We have viewed the films and magazine upon which the defendants were convicted utilizing the factors of T.C.A. § 39–6–1101 as approved by *Taylor v. State, ex rel., Kirkpatrick, supra.* This material clearly falls within the definition of "obscene" under the statute, in that an average person, applying contemporary community standards, would find that each of the materials, taken as a whole, appealed to the prurient interest; that the magazine and each film depicted sexual conduct in a patently offensive way; and that each of

the materials, taken as a whole, lacked serious literary, artistic, political, or scientific value. As such it may be regulated since it falls outside the protection of the First Amendment. *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). We hold that the jury properly applied the factors of T.C.A. § 39–6–1101 and affirm their decision that the materials are obscene.

We have fully considered all issues raised by the defendants and find them to be without merit. The judgments are affirmed.

DUNCAN, J., concurs.

DAUGHTREY, J., files separate concurring opinion.

DAUGHTREY, Judge, concurring.

As the majority opinion notes, the jury in this case implicitly found that three of the four films submitted were legally obscene but that the fourth, entitled "Breakfast in Bed," was not. After reviewing all four films, I can only conclude that this last film is equally as pornographic as the other three, and that the jury's clearly inconsistent verdicts, while not illegal under state law, are nothing short of serendipitous.

The obvious caprice involved in the process of applying "community standards" to determine which pornographic items violate state regulations and which do not suggests to me an excellent reason for interpreting Article 1, Section 19 of the Tennessee Constitution to protect from censorship materials such as those involved in this case (especially where the record shows that no children have been solicited or exploited in connection with the defendants' activities, or in any of the materials which are the focus of this prosecution). Were the state constitutional question open for me to decide, I would so hold.

But the question is not an open one. Our Supreme Court specifically addressed this issue in *Leech v. American Booksellers Ass'n., Inc.,* 582 S.W.2d 738 (Tenn.1979), and decided to adhere to the federal constitutional standards adopted by the United States Supreme Court in *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), despite the court's recognition that it had the authority to "interpret Article I, § 19 as granting absolute protection to speech and press and forbid any and all regulation of pornography in Tennessee." *Leech v. American Booksellers Ass'n., Inc., supra,* at 745.

With the state constitutional question thus foreclosed, I conclude that I have no recourse but to concur in the result reached by the majority in this case.

### ORDER ON PETITION TO REHEAR

The defendants have filed a Petition to Rehear. After considering the same, we find it to be without merit and it is overruled.

/s/ Lloyd Tatum
LLOYD TATUM, JUDGE
/s/ Joe D. Duncan
JOE D. DUNCAN, JUDGE

DAUGHTREY, J., not participating.

### ORDER ON SUPPLEMENT TO PETITION TO REHEAR

The appellant has filed a supplement to the petition to rehear. After considering it, we adhere to our original judgment on the petition to rehear.

/s/ Lloyd Tatum
LLOYD TATUM, JUDGE

DUNCAN, J., concurs.

DAUGHTREY, J., not participating.