**STATE of Tennessee, Appellee,**

v.

**Jerry C. PENDERGRASS, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Sept. 20, 1989.

Permission to Appeal Denied by Supreme Court Jan. 2, 1990.

John E. Herbison, Nashville, for appellant.

Charles W. Burson, Atty. Gen. and Reporter, C. Anthony Daughtrey, Asst. Atty. Gen., Nashville, Gary D. Gerbitz, Dist. Atty. Gen., Stephen M. Bevil, Asst. Dist. Atty. Gen., Chattanooga, for appellee.

## OPINION

JONES, Judge.

The appellant, Jerry C. Pendergrass, was convicted of six counts of possessing obscene material with intent to distribute by a jury of his peers. The trial judge sentenced the appellant to pay a fine of $1,000 and serve six months in the local workhouse as to each count; and he ordered that the jail sentences are to be served concurrently. The effective sentence imposed by the trial judge is a fine of $6,000 and six months in the local workhouse.

After the trial court denied the appellant's motion for a new trial, he appealed as of right to this Court pursuant to Rule 3(b), Tenn.R.App.P.

## ISSUES PRESENTED FOR REVIEW

The appellant has raised six issues for our review. He contends that the evidence is insufficient to sustain his convictions, the statute which proscribes the offense for which he stands convicted is facially unconstitutional, the trial judge unduly restricted the cross-examination of prosecution witnesses, the trial judge committed error in permitting testimony as to the content of printed material, offered for sale in his book stores, that was not alleged to be obscene, the trial judge erred by refusing to give a special request regarding the meaning of "prurient interest," and the trial judge committed error in refusing to suspend his sentences and grant him probation.

## SUFFICIENCY OF THE EVIDENCE

The appellant contends that the evidence contained in the record is insufficient to support his convictions. He argues the State failed to prove beyond a reasonable doubt that (a) the magazines and video tapes appeal to the prurient interest of a hypothetical average member of the public at large, (b) the magazines and video tapes depicting homosexual activities appeal to the prurient interest of the homosexual community, and (c) the appellant possessed the materials alleged in the presentments.

The record reflects that on October 4, 1987, a police officer, David Carnes, entered an establishment known as Choo Choo Video and purchased a magazine entitled "All Tied Up." On this same date, Officer Carnes entered an establishment known as Keith Video/Broadway Books and purchased a magazine entitled "Motel Menage–A–Trios." On October 13, 1987, Officer Carnes returned to both establishments. He purchased a movie, "Good Sex," from the Choo Choo Video store and a movie entitled "Squirts" from Keith Video/Broadway Books.

On October 23, 1987, a second police officer, Glenn Lemley, visited both Keith Video/Broadway Books and Choo Choo Video. He purchased two magazines, "Anal Climax" and "A Hole Lot of Fucking," from Keith Video/Broadway Books. He also purchased two magazines, "Fucking Sucking Trios" and "Best of the Orient," from Choo Choo Video.

The magazines "Motel Menage–A–Trios"[1] and "All Tied Up,"[2] and the video tapes "Squirts"[3] and "Good Sex,"[4] graphically depict men engaged in various forms of sexual conduct.[5] The sexual conduct depicted includes fellatio, anal intercourse, masturbation, as well as other forms of sexual conduct. The magazines "A Hole Lot of Fucking,"[6] "Anal Climax,"[7] "Best of the Orient,"[8] and "Fucking Sucking Trios,"[9] graphically depict men and women

---

1. The appellant is alleged to have possessed this magazine with the intent to distribute in presentment number 171235.

2. The appellant is alleged to have possessed this magazine with the intent to distribute in presentment number 171237.

3. The appellant is alleged to have possessed this video tape with the intent to distribute in presentment number 171243.

4. The appellant is alleged to have possessed this video tape with the intent to distribute in presentment number 171241.

5. The magazine "Motel Menage–A–Trios" involves three men engaged in homosexual conduct together. The remaining matter depicts two men engaged in such activity. "Squirts" contains two episodes, "Laundry List" and "Oriental Shower." "Good Sex" involves three different men engaged in sexual conduct with the same partner, but at different times.

6. The appellant is alleged to have possessed this magazine with the intent to distribute in presentment number 171245.

7. The appellant is alleged to have possessed this magazine with the intent to distribute in presentment number 171245.

8. The appellant is alleged to have possessed this magazine with the intent to distribute in presentment number 171239.

9. The appellant is alleged to have possessed this magazine with the intent to distribute in presentment number 171239.

engaged in various forms of sexual conduct.[10] The sexual conduct depicted in these magazines includes vaginal intercourse, anal intercourse, fellatio, cunnilingus, masturbation, as well as other forms of sexual conduct. In two of the magazines, a dildo is placed in the woman's vagina and simultaneously inserted into her vagina and rectum.

T.C.A. § 39–6–1104(a) provides in part that "[i]t shall be unlawful to knowingly ... possess with intent to distribute ... any obscene matter." Consequently, before a person can be convicted of knowingly possessing obscene matter with the intent to distribute, it must be established beyond a reasonable doubt that the accused (a) knowingly, (b) possessed, (c) obscene matter, (d) with the intent to distribute the matter.

■ The term "knowingly," as used in the statute, means to have "actual or constructive knowledge of the subject matter."[11] A person is deemed to have "constructive knowledge" of the content of the matter "if he has knowledge of facts which would put a reasonable and prudent man on notice as to the suspect nature of the material."[12] The record clearly establishes that the appellant "knowingly" possessed the obscene matter with the intent to distribute. The appellant owned ninety-five percent (95%) of Keith Video/Broadway Books and Choo Choo Video, and he received the same percentage of the profits. He served as president of the corporation which owned the companies. He testified that he personally ordered the merchandise sold in both stores, he had examined some of the magazines sold in both stores, and he further testified that "we" unpacked and sealed the magazines in clear, plastic containers before placing them on the shelves for sale. *See State v. Summers,* 692 S.W.2d 439, 446 (Tenn.Crim.App.1985).

■ The word "possession," as used in the statute, embraces both actual and constructive possession. When obscene matter is found on the premises owned or in the possession of a person, a rebuttable inference arises that the person owned or possessed the obscene matter. However, the mere presence of a person in the area where the obscene matter is discovered is not, alone, sufficient to support a finding that the person possessed the obscene matter; nor is the mere association with a person who controls obscene matter sufficient, standing alone, to support a finding that the person possessed the obscene matter. Before a person can be found to constructively possess obscene matter, it must appear that the person has the power and intention, at a given time, to exercise dominion and control over the matter, directly or through others.

As previously indicated, the appellant owned practically all of the stock of the corporation which owned both stores, he served as president of the corporation, and received ninety-five (95%) of the profits. He ordered the merchandise sold in both establishments, had examined some of the magazines sold by the stores, and indicated that he participated in preparing the materials and placing some on the shelves. When the trial judge later padlocked Keith Video/Broadway Books and Choo Choo Video, the appellant transported the inventory to Johnson City, Tennessee, and opened a new store. In addition, there was testimony that the appellant was seen inside the store by a police officer on several occasions.

■ A magazine, motion picture film, or other pictorial representation[13] is deemed obscene if (a) the average person, applying contemporary community standards,[14] would find that the work, taken as a whole,

---

**10.** "Anal Climax" involves two women and a man engaged in sexual activity together. The remainder of the magazine depicts a man and a woman engaged in sexual activity.

**11.** T.C.A. § 39–6–1101(3).

**12.** T.C.A. § 39–6–1101(3).

**13.** T.C.A. § 39–6–1101(4).

**14.** T.C.A. § 39–6–1101(1). The term "community," as used in the Act, "means the state of Tennessee."

appeals to the prurient interest,[15] (b) the work depicts or describes, in a patently offensive way, sexual conduct,[16] and (c) the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.[17] Based upon our review of the matter hereinabove set forth, and applying the community standards of the State of Tennessee, we conclude that the magazines and video tapes clearly (a) appeal to a shameful or morbid interest in sex, (b) depict sexual conduct in a manner which substantially exceeds the customary limits of candor, and (c) lacks serious literary, artistic, political, or scientific value. *See State v. Hunt,* 660 S.W.2d 513, 519–520 (Tenn.Crim.App. 1983); *State v. Davis,* 654 S.W.2d 688, 695 (Tenn.Crim.App.1983).

■ The term "matter," as used in the statute, is broad enough to encompass the magazines and video tapes which formed the basis of the prosecutions against the appellant.[18]

■ The term "distribute," as used in the statute, means "to transfer possession of, whether with or without consideration." [19] It was clearly established that the obscene matter in these cases was possessed with the intent to distribute. Both businesses were retail establishments, and the matter was possessed for sale, as evidenced by the purchase prices that appear on the face of some of the magazines, and the purchase of the matter by plain clothes police officers. In addition, the appellant stated that he received ninety-five (95%) of the profits from the sale of the matter.

■ The appellant's contention that the State failed to establish that the magazines and video tapes depicting homosexual activities appealed to the prurient interest of the homosexual community is devoid of merit. There is nothing contained in the record which establishes that these magazines and

video tapes were designed for or primarily disseminated to a particular sexually deviant group. *State v. Summers,* 692 S.W.2d 439, 444–445 (Tenn.Crim.App.1985). The record reflects that these magazines and video tapes were for sale to the public, regardless of sexual preferences.

It has long been established that the accused has the burden in these proceedings to establish that the obscene matter is designed for and primarily disseminated to a particularly sexually deviant group before the State is required to show the obscene matter appeals to the prurient interest of the members of that group. *State v. Summers,* supra at 445. *See Mishkin v. New York,* 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966). Since the appellant failed to establish that these particular magazines and video tapes were designed for or primarily desseminated in the homosexual community, the prurient interest requirement must be determined in the same manner as the magazines depicting heterosexual conduct.

As can be seen, there is sufficient evidence contained in the record from which a rational trier of fact can conclude that the appellant knowingly possessed obscene matter with the intent to distribute, as charged in the six presentments, beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

This issue is without merit.

## CONSTITUTIONALITY OF OBSCENITY LAWS

■ While the appellant challenges the constitutionality of the obscenity laws of this jurisdiction, he concedes that the Tennessee Supreme Court has ruled that these statutes pass constitutional muster. *See Leech v. American Booksellers Assoc., Inc.,* 582 S.W.2d 738 (Tenn.1979); *Taylor v.*

---

**15.** T.C.A. § 39–6–1101(5)(A). T.C.A. § 39–6–1101(8) defines the term "prurient interest," as "a shameful or morbid interest in sex."

**16.** T.C.A. § 39–6–1101(5)(B). T.C.A. § 39–6–1101(9) defines the phrase "sexual conduct." The definition of this phrase encompasses the conduct contained in the video tapes and

magazines purchase by the police officers from both establishments.

**17.** T.C.A. § 39–6–1101(5)(C).

**18.** T.C.A. § 39–6–1101(4).

**19.** T.C.A. § 39–6–1101(2).

*State ex rel. Kirkpatrick,* 529 S.W.2d 692 (Tenn.1975); *State v. Davis,* 654 S.W.2d 688 (Tenn.Crim.App.1983); *State v. Hunt,* 660 S.W.2d 513 (Tenn.Crim.App.1983). This Court is bound by the decisions of our Supreme Court. *Barger v. Brock,* 535 S.W.2d 337 (Tenn.1976); *State v. Davis,* supra.

This issue is without merit.

### LIMITATIONS PLACED ON CROSS–EXAMINATION OF WITNESSES

■ During cross-examination, defense counsel asked Officer Carnes: "When you watched these movies in the courtroom today, did you become sexually aroused?" The assistant district attorney general interposed an objection to the question. The trial judge sustained the objection.

Defense counsel filed an affidavit post-trial. The affidavit recites that defense counsel would have asked all prosecution witnesses the question posed to Officer Carnes. In addition, he would have asked the following questions:

> When you viewed this material, did it excite lustful thoughts?
> When you viewed this material, did it make you itch?
> When you viewed this material, did you long for sex?
> When you viewed this material, did you become uneasy with desire or longing?
> When you viewed this material, did it provoke itching, morbid or lascivious longings?

This issue has been waived. When the trial court ruled that the question propounded by defense counsel was improper, counsel should have requested a jury-out hearing so that he could make a proffer of proof. During the hearing, counsel could have asked the question propounded, as well as the questions he said he would have asked, but for the ruling of the trial judge. *See* Tenn.R.App.P. 36(a). However, we opt to address this issue on the merits.

■ It has long been established that the propriety, scope, and control of the examination of witnesses rest within the sound discretion of the trial court; and this Court will not interfere with the exercise of this discretion unless it clearly appears upon the face of the record that the trial court abused its discretion when ruling. *Coffee v. State,* 188 Tenn. 1, 4, 216 S.W.2d 702, 703 (1948). This rule applies to the cross-examination of witnesses. *State v. Manning,* 490 S.W.2d 512, 515 (Tenn.1973); *Edwards v. State,* 221 Tenn. 60, 66, 424 S.W.2d 783, 786 (1968); *State v. Fowler,* 213 Tenn. 239, 353, 373 S.W.2d 460, 466 (1963). In this case, we cannot say that the trial judge abused his discretion in ruling that the question propounded was improper.

■ The questions defense counsel says he would have asked cannot be considered because the questions do not appear in the transcript of the proceedings. Tenn.R.App.P. 36(a). Furthermore, the trial court was not given the opportunity to rule upon the propriety of these questions.

This issue is without merit.

### INTRODUCTION OF EVIDENCE THAT WAS NOT ALLEGED TO BE OBSCENE

■ A police officer testified that the inventory of the two establishments, Keith Video/Broadway Books and Choo Choo Video, depicted acts of bondage, sadomasochism, torture, people being tied up, gagged and beaten, the use of leather goods and whips, as well as people wearing masks. There was also evidence that the inventory of both establishments included inflatable dolls, rubber penises, and plastic or rubber items of the male and female sex organs. The defendant argues these materials were not included in the presentments, and, furthermore, this testimony was not relevant to the inquiry before the court.

The witnesses testified that the appellant was not present in either store when the purchases were made. There was testimony that the appellant was present when a third police officer entered the store and made a purchase. Consequently, the State was required to show that the appellant

had constructive knowledge and possession of the magazines and video tapes which formed the basis of the prosecutions against him.

This evidence was relevant to show that the appellant, as owner, operator, and president of the corporation which owned both establishments, had knowledge of sufficient facts that would put a reasonably prudent person on notice as to the suspect nature of the material. Consequently, this evidence was relevant, as well as probative, of an essential element of the prosecution's case. *See State v. Banks*, 564 S.W.2d 947, 951 (Tenn.1978).

This issue is without merit.

### REFUSAL OF SPECIAL REQUEST

■ The appellant submitted a special request which contained a definition of the phrase "prurient interest". The trial court refused to incorporate the special request into the charge given to the jury. The appellant contends that the trial court committed error of prejudicial dimensions in this regard. We disagree.

An examination of the charge given by the trial judge reveals that the charge included a full and complete explanation of the phrase "prurient interest". Consequently, the trial judge did not commit error in refusing to give the appellant's special request. *See Edwards v. State*, 540 S.W.2d 641, 649 (Tenn.1976), *cert. denied*, 429 U.S. 1061, 97 S.Ct. 784, 50 L.Ed.2d 777 (1977); *Douglass v. State*, 213 Tenn. 643, 646, 378 S.W.2d 749, 750 (1964); *Bostick v. State*, 210 Tenn. 620, 630–631, 360 S.W.2d 472, 477 (1962); *State v. Thomas*, 755 S.W.2d 838, 844 (Tenn.Crim.App.1988); *State v. Summers*, supra at 445.

This issue is without merit.

### DE NOVO REVIEW OF SENTENCE

■ The appellant contends that the trial court should have suspended his sentences and placed him on probation. He argues that the trial judge conditioned the grant of probation upon defendant's agreement to close the two establishments he was presently operating.

The appellant operated two establishments, Keith Video/Broadway Books and Choo Choo Video, until they were ordered padlocked by the trial court. The appellant subsequently opened an identical establishment, using the inventory from the two padlocked stores, in Johnson City, Tennessee. Shortly after the store was opened, the local authorities seized the inventory. The appellant returned to Chattanooga and opened two new establishments. He was operating the new establishments when the trial court sentenced him.

The appellant testified he sold adult merchandise in his new stores. The merchandise was described as "similar" to the merchandise sold in his previous stores, but he denied selling any of the magazines or video tapes found to be obscene by the jury.

The trial court, aware that the appellant was engaged in selling merchandise "similar" to what was found by the jury to be obscene, told defense counsel:

I'm not going to engage in censorship, but if Mr. Pendergrass closes his places of business within seven days, completely closes them and does not turn those operations over to some other individual, then the Court would consider at that time whether or not he should have to serve active time or whether or not he should serve some form of alternative punishment.

Defense counsel immediately advised the trial court that the appellant would not close the two stores.

As long as the appellant continued to distribute obscene matter, he was not entitled to have his sentences suspended and be placed on probation. This also illustrates that the appellant was unwilling to rehabilitate himself. In addition, if probation had been granted, the appellant would have been in violation of the conditions of his probation. It is generally provided that a probationer must obey the laws of the United States, the laws of this State, along with any county and city regulations.

Based upon our *de novo* review of the record, the appellant was not a good candidate for probation in any event. His testimony reveals that he has a lack of remorse

for the offenses of which he stands convicted. He takes the view that what he sold in his previous stores, and what he was selling in the new stores, is not obscene. Apparently, a jury must decide whether or not the materials are obscene on a piece-by-piece basis.

The record reflects that the appellant has a history of criminal convictions and behavior. His convictions include driving while under the influence, two counts, operating a motor vehicle without a license, felonious assault, carrying a pistol, interfering with a police officer, and the unlawful operation of a business. There was an indictment pending against the appellant for the unlawful possession of a controlled substance when he appeared for sentencing.

The appellant refused to comply with the request of the pre-sentence officer regarding financial statements. He was asked on several occasions to provide some documentation regarding his financial status. These included personal income tax returns, tax returns of the corporation, or a statement from his accountant. Nothing was ever submitted. The appellant stated his records were burned in a fire. If the appellant desired to cooperate, he could have furnished the records that were retained by the certified public accountant hired by the corporation; and he could have made application for copies of his federal income tax returns through the Internal Revenue Service.

The question of deterrence is also relevant in this case. The denial of probation on this ground was necessary to deter the appellant from engaging in the same or similar conduct for which he was convicted, as well as to deter others who are engaged in the same or similar business.

This issue is without merit.

DUNCAN, P.J., and WILLIAM P. NEWKIRK, Special Judge, concur.