# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### August 2000 Session

## STATE OF TENNESSEE v. JAMES MCKINLEY CUNNINGHAM

**Appeal from the Criminal Court for Grundy County**
**No. 3096     Buddy D. Perry, Judge**

---

### No. M1999-01995-CCA-R3-CD - Filed October 13, 2000

---

The defendant was convicted by a Grundy County jury of premeditated first degree murder and sentenced to life. In this appeal, he challenges: (1) the sufficiency of the evidence; (2) the admission of a photograph of the victim's body; (3) the exclusion of testimony relating to statements made by the victim; and (4) the evidentiary rulings relating to the victim's propensity toward violence. Upon our review of the record, we find no reversible error and affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which JERRY L. SMITH, J., and L. TERRY LAFFERTY, Sr. J., joined.

Paul Cross, Monteagle, Tennessee, for the appellant, James McKinley Cunningham.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; James Michael Taylor, District Attorney General; and Steven H. Strain, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

Defendant was convicted by a Grundy County jury of premeditated first degree murder and sentenced to life with the possibility of parole. He raises the following issues on appeal:

(1) whether the evidence was sufficient to sustain his conviction;
(2) whether the trial court erred in admitting a photograph of the victim's body;
(3) whether the trial court erred in excluding testimony relating to statements by the victim; and
(4) whether the trial court erred in its evidentiary rulings relating to the victim's propensity toward violence.

We conclude the evidence was sufficient to sustain the defendant's conviction, and the trial court committed no reversible error in its evidentiary rulings. Therefore, the judgment of the trial court is affirmed.

## FACTS

It is undisputed that the defendant shot and killed his father on February 19, 1997.

Approximately one week before the homicide, the defendant was arrested on charges of theft. An inmate testified that the morning before the homicide, the defendant told him that he was going to kill the "son of a bitch," referring to his father. Thereafter, the defendant was released on bond.

The defendant's girlfriend testified that the morning before the murder, she told the defendant his father "tried something" with her while the defendant was in jail. She further testified that, on the night of the murder, she was sleeping with the defendant and awoke to see the defendant's father standing in the doorway looking at her. She then told the defendant that his father was "peeking through the blanket" covering the doorway. According to her testimony, the defendant sat up, smoked a cigarette, then retrieved his British Lee Infield bolt action rifle, went into the living room, and shot his father while his father was lying on the couch. She testified that there were several shots with five or six seconds between each shot.

Thereafter, the defendant loaded the body in the trunk of his mother's car, took it to Monteagle, and dumped the body over a ravine in a remote area. Defendant also burned the couch and disposed of his father's clothing and the weapon. The defendant, his girlfriend and mother then left for Oklahoma.

The victim's body was not discovered until March 23, 1997. The defendant was arrested in Oklahoma in April of 1997. On the return trip to Tennessee, the defendant told the Grundy County Sheriff, "I shot the son of bitch, I should have shot him twenty years ago for what he's done in the past and what he would do in the future." The defendant also informed the Sheriff that he had disposed of the weapon in a nearby lake. Subsequently, the weapon was located at the place the defendant had described.

At trial, the defendant contended that he was provoked by the victim's actions toward his girlfriend. He testified that on the day of the murder, his girlfriend told him the victim "tried to rape" her. The defendant further testified that his girlfriend was pregnant with his child, and that she told him the victim threatened their unborn child if the girlfriend told anyone about the incident.[1] The defendant also testified that when he bolted the gun, the victim tried to knock the gun out of his hand and the first shot missed, but he "kept shooting" until his mother tried to take the gun from him.

---

[1]It appears Campbell was unsure when she related the information about the unborn child threat to the defendant. She stated that she believed she told him on the day of the murder, but admitted it could have been after the murder.

2

Additionally, the defendant offered the testimony of a psychologist who testified that the defendant suffered from post traumatic stress disorder as a result of trauma experienced during the defendant's childhood.

The defendant's theory at trial was that he was provoked; therefore, the homicide was, at most, voluntary manslaughter. The trial court charged the jury with the offenses of premeditated first degree murder, second degree murder, voluntary manslaughter and reckless homicide. The jury found the defendant guilty of premeditated first degree murder.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant contends the evidence was insufficient to sustain his conviction for premeditated first degree murder. He claims the evidence showed he was adequately provoked; therefore, the evidence only supports a conviction for voluntary manslaughter.

### A. Standard of Review

In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). A jury verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994). On appeal, the state is entitled to the strongest legitimate view of the evidence and all legitimate or reasonable inferences which may be drawn therefrom. *Id.* This Court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the defendant demonstrates that the facts contained in the record and the inferences which may be drawn therefrom are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a reasonable doubt. State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996). Accordingly, it is the appellate court's duty to affirm the conviction if the evidence, viewed under these standards, was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994).

### B. Premeditation

The applicable definition of first degree murder is "[a] premeditated and intentional killing of another." Tenn. Code Ann. § 39-13-202(a)(1). Premeditation necessitates "a previously formed design or intent to kill," State v. West, 844 S.W.2d 144, 147 (Tenn. 1992)(citations omitted), and "an act done after the exercise of reflection and judgment . . . [meaning] that the intent to kill must have been formed prior to the act itself." Tenn. Code Ann. § 39-13-202(d). It also requires that the accused be "sufficiently free from excitement and passion as to be capable of premeditation." *Id.* A homicide, once proven, is presumed to be second degree murder, and the state has the burden of proving premeditation to raise the offense to first degree murder. State v. Nesbit, 978 S.W.2d 872, 898 (Tenn. 1998).

Although the jury may not engage in speculation, it may infer premeditation from the manner and circumstances of the killing. State v. Bland, 958 S.W.2d 651, 660 (Tenn. 1997); State v. Bordis, 905 S.W.2d 214, 222 (Tenn. Crim. App. 1995). Our Supreme Court delineated several circumstances that may be indicative of premeditation, including the use of a deadly weapon upon an unarmed victim, the fact that the killing was particularly cruel, declarations of the intent to kill the victim by the defendant, the making of preparations before the killing for the purpose of concealing the crime, and calmness immediately after the killing. *See* Bland, 958 S.W.2d at 660.

### C. Analysis

Viewing the evidence in the light most favorable to the state, we must conclude that the evidence was sufficient to support the defendant's conviction for premeditated first degree murder. While the jury was charged with the law on voluntary manslaughter, it obviously rejected this theory. This court has previously concluded that it is the jury's prerogative to reject the defendant's claim of provocation. State v. Meade, 942 S.W.2d 561, 564 (Tenn. Crim. App. 1996).

Voluntary manslaughter is the "intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." Tenn. Code Ann. § 39-13-211(a). Whether the defendant's acts constitute a killing due to "adequate provocation" is a question for the jury. State v. Johnson, 909 S.W.2d 461, 464 (Tenn. Crim. App. 1995). The crucial issue for our consideration is whether the evidence established all of the elements of premeditated first degree murder.

The evidence of provocation came from the testimony of the defendant and the defendant's girlfriend. The girlfriend stated that on the morning before the murder, she told the defendant the victim "tried something" with her. However, the jury also heard testimony that the defendant earlier announced his intent to kill the victim. Additionally, defendant's girlfriend testified that the defendant sat on the edge of the bed and smoked a cigarette before retrieving the gun and shooting his father.

At the time of the murder, the victim was lying on the couch and did not have a weapon. The defendant testified that when he picked up the gun by his bed, he intended to shoot the victim. When the first shot missed the victim, he continued to fire until his mother tried to take the gun out of his hands. Two bullets struck the victim. The jury heard agents from the Tennessee Bureau of Investigation testify that defendant's weapon was a bolt action rifle, and the defendant's girlfriend testified that there were five to six seconds between shots. The medical testimony revealed that the victim could have survived for fifteen to thirty minutes before bleeding to death, yet no medical treatment was sought.

We note that concealment of evidence after the crime is, alone, insufficient to establish premeditation. West, 844 S.W.2d at 148. However, calmness immediately after a crime is relevant in determining the element of premeditation. Bland, 958 S.W.2d at 660. Here, testimony from the defendant's girlfriend and the defendant himself revealed that he had the presence of mind shortly

4

after the murder to attempt to distract the neighbors by yelling at an imaginary dog and firing shots into the air so that the neighbors would not be curious about the previous shots. He then disposed of the victim's body in an extremely remote area, dumped the weapon in a nearby lake, burned the couch on which his father was lying, and threw away the victim's clothing. He then fled to Oklahoma. Furthermore, while he was being transported from Oklahoma to Tennessee, the defendant stated, "I shot the son of a bitch, I should have shot him twenty years ago for what he's done in the past and what he would do in the future."

We conclude there was adequate evidence for the jury to conclude the defendant sufficiently reflected upon his actions before shooting the victim. *See* Tenn. Code Ann. § 39-13-202(d). Thus, the jury could reject the defendant's theory of adequate provocation. Therefore, in the light most favorable to the state, the defendant's conviction for premeditated first degree murder is supported by the evidence.

## II. PHOTOGRAPHS

Prior to trial, the defendant sought to prevent the state from introducing photographs of the victim's body into evidence. The trial court ruled that close-up photographs of the corpse would not be allowed, but one long range photograph depicting the scene where the body was found would be admissible. The defendant contends that the photograph should have been excluded.

The admissibility of photographs is governed by Tenn. R. Evid. 403 and State v. Banks, 564 S.W.2d 947 (Tenn.1978). "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." Tenn. R. Evid. 403. Whether to admit a photograph is within the discretionary authority of the trial court, and the admission will not be reversed absent a clear showing of an abuse of discretion. State v. Dickerson, 885 S.W.2d 90, 92 (Tenn. Crim. App. 1993).

The photograph was not gruesome, horrifying, or inflammatory. The image of the victim's body is extremely small and no discoloration or decomposition is distinctly apparent. The photograph shows the remote area where the body was found. Thus, we conclude the trial court did not err in admitting the photograph.

## III. EVIDENCE OF PROVOCATION

The defendant alleges the trial court erroneously excluded evidence that he was acting under adequate provocation. In particular, the defendant argues the trial court should have allowed evidence of an incident which occurred between the victim and the defendant's girlfriend, Cybil Campbell, one week prior to the murder. The defendant claims the victim told his girlfriend they were going to have themselves an "orgy party," and the victim then proceeded to masturbate in front of his girlfriend. When Campbell attempted to testify that the defendant's mother told her that the

defendant's mother informed defendant at the jail about this incident, the trial court sustained the state's hearsay objection. The defendant argues that Campbell should have been allowed to testify to what she was told by the defendant's mother. The defendant argues that the statement was not offered for the truth of the matter asserted, but rather was offered as evidence of provocation. The defendant's mother did not testify at the defendant's trial.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). The trial court did not err in excluding Campbell's testimony that the defendant's mother told her that she had informed the defendant of this incident. The evidence would be admissible if offered through the testimony of the defendant's mother or by the defendant. In that event, the evidence would not be offered for its truth, but rather to establish a basis for provocation of the defendant. However, defendant sought to introduce this evidence through the testimony of Campbell as to what his mother told her. It was then sought to be introduced for its truth; namely, that the mother in fact told the defendant about the incident. The evidence was properly excluded as hearsay.

## IV. VICTIM'S PROPENSITY FOR VIOLENCE

The defendant contends the trial court erred in excluding evidence of the victim's propensity for violence. The defense sought to introduce the following: (1) testimony from the victim's former lawyer regarding the victim's reputation for violence; (2) defendant's own testimony regarding an incident of violence by the victim against the defendant's sister; and (3) testimony regarding the rape of the defendant's girlfriend by the victim. The trial court instructed the defendant that, before introducing evidence of the victim's propensity for violence, he must first put forth evidence establishing a *prima facie* case of self-defense or that the victim was the first aggressor. The defendant did not allege self-defense; defendant failed to present evidence that he acted in self-defense, or that the victim was the first aggressor; and the jury was not instructed on self defense. Regardless, defendant contends the victim's propensity for violence was relevant to the issue of provocation.

### A. Testimony of the Victim's Former Attorney

The defendant contends the victim's former attorney should have been allowed to testify that the victim had a reputation in the community for violence. *See* Tenn. R. Evid. 405(a). The trial court concluded the testimony was not relevant to the issue of provocation. We find no error in disallowing the testimony. Self-defense was not an issue. *See generally* State v. Ruane, 912 S.W.2d 766, 780 (Tenn. Crim. App. 1995) (holding specific acts of violence by the victim are admissible to corroborate the defendant's assertion that the victim was the first aggressor). In this case, the victim's reputation in the community for violence had no bearing upon whether or not the defendant acted under adequate provocation based upon his state of mind at the time of the shooting.

6

## B. Defendant's Testimony

The defendant argues that he should have been allowed to testify about a specific instance of violence involving his sister and the victim. However, the only statements regarding this proposed testimony were made by defense counsel during the hearing on this issue. It is unclear when the alleged incident occurred, whether the defendant witnessed the alleged incident, and what, if any, effect it had on the defendant. The defendant made no offer of proof. Since we may not speculate about this possible testimony, this issue is waived. *See* State v. Pendergrass, 795 S.W.2d 150, 156 (Tenn. Crim. App. 1989); Tenn. R. App. P. 36(a); Tenn. R. Evid. 103(a)(2).

## C. Impeachment of Campbell

The defendant claims the trial court erred in ruling that testimony regarding the alleged rape of his girlfriend, Campbell, by the victim was admissible only for the purpose of assessing Campbell's credibility as a witness.

Campbell testified that on the day of the murder she told the defendant the victim "tried something" with her, but denied telling him that the victim "tried to rape" her. On the other hand, the defendant testified that Campbell told him the victim "tired to rape" her. On cross-examination, Campbell denied telling the defense investigator that she told the defendant the victim "tried to rape" her. During the defendant's case-in-chief, the investigator testified that Campbell said she told the defendant that the victim "tried to rape" her. Following the investigator's testimony, Campbell was re-called by the defense and testified that she was in fact raped by the victim, but again stated she never told the defendant she had been raped.

### (1)
### Investigator's Testimony

The testimony given by the investigator that Campbell said she told the defendant that the victim "tried to rape" her was admissible under the prior inconsistent statement rule. *See* Tenn. R. Evid. 613(b). As such, the testimony was admissible for impeachment purposes, but not as substantive evidence. State v. Martin, 964 S.W.2d 564, 567 (Tenn. 1998).

### (2)
### Campbell's Testimony

Campbell's testimony presents a different problem. The trial court, over the state's objection, allowed defense counsel to ask Campbell if the victim had in fact raped her. The trial court concluded "the fact that she was raped [goes toward] the fact that she may have told others that." When Campbell testified she was raped, no limiting instructions were given to the jury by the trial

7

court.  Neither counsel in final argument suggested that this evidence was limited in its purpose. However, in the jury charge the trial court instructed the jury that the testimony "was not admitted as substantive evidence, but was admitted for the limited purpose of allowing the jury to determine the credibility of Cybil Campbell."

We do not believe the defendant was prejudiced by this charge.  Defendant argues Campbell's testimony that she was raped should be considered as substantive evidence since this makes it more likely that Campbell told the defendant the victim "tried to rape" her.  Regardless, the crucial issue in this case was whether there was adequate provocation for defendant's action.  Thus, the critical inquiry was defendant's state of mind at the time of the murder.  Whether Campbell was actually raped does not go toward defendant's state of mind, but rather his state of mind was caused by what Campbell told him occurred.  If the trial court did err in telling the jury this evidence was non-substantive, we note the charge also stated that it went to Campbell's credibility.  In the context of this case, this meant whether Campbell told defendant the victim "tried something" with her (as she testified), or whether she told the defendant the victim "tried to rape" her (as the defendant testified).  Thus, the jury was free to consider Campbell's testimony that she was raped in judging her credibility as to what she testified she told the defendant.  If there was any error in the jury charge, it was harmless.  Tenn. R. App. P. 36(b).

## CONCLUSION

We conclude the evidence was sufficient to sustain the defendant's conviction for premeditated first degree murder and find the trial court committed no reversible error with regard to its evidentiary rulings.   Thus, the judgment of the trial court is affirmed.

_____
JOE G. RILEY, JUDGE