IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

## HAROLD WAYNE NICHOLS v. STATE OF TENNESSEE

**Criminal Court for Hamilton County**
**No. 205863**

_____

**No. E2025-00089-CCA-R28-PD**

_____

**ORDER**

The Petitioner, Harold Wayne Nichols, has filed an application for permission to appeal from the post-conviction court's denial of his motion to reopen his petition for post-conviction relief. *See* Tenn. Code Ann. § 40-30-117(c); Tenn. Sup. Ct. R. 28, § 10B. The Petitioner asserts that the United States Supreme Court's decision in *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181 (2023) ("SFFA"), announced a new rule of constitutional law that should be applied retroactively to his case.

More specifically, the Petitioner contends that *SFFA* reaffirmed that the Equal Protection Clause of the Fourteenth Amendment prohibits governmental reliance on race except in the narrowest of circumstances. Based on that principle, he argues that Tennessee's comparative proportionality review in capital sentencing—which includes consideration of a defendant's race as one of several comparative factors—constitutes an unconstitutional race-based classification that cannot survive strict scrutiny.

The State responds that SFFA neither created a new rule of constitutional criminal law nor applies retroactively to post-conviction proceedings. It further asserts that Tennessee's comparative proportionality review considers race only to ensure that death sentences are not imposed in a discriminatory manner, not to confer any racial preference. Upon full review of the application, response, and applicable law, we conclude that the post-conviction court did not abuse its discretion in denying the Petitioner's motion to reopen his post-conviction petition.

# FACTUAL BACKGROUND

The Petitioner pleaded guilty to first degree felony murder, aggravated rape, and first-degree burglary related to the September 1988 rape and murder of Karen Pulley. Following a penalty phase, a jury sentenced the Petitioner to death. On direct appeal, the Tennessee Supreme Court affirmed the death sentence. *See State v. Nichols*, 877 S.W.2d 722, 739 (Tenn. 1994).

Under Tennessee law, every death sentence is subject to comparative proportionality review, through which the supreme court determines whether the sentence "is excessive or disproportionate to the penalty imposed in similar cases, considering both the nature of the crime and the defendant." *See* Tenn. Code Ann. § 39-13-206(c)(1)(D). This review seeks to ensure that death sentences are not imposed arbitrarily or capriciously. In conducting that review in *Nichols*, the court concluded that the Petitioner's death sentence was not arbitrary or disproportionate when compared to sentences imposed in similar cases. *See Nichols*, 877 S.W.2d at 739.

The Petitioner thereafter sought post-conviction relief. The post-conviction court denied relief as it related to the first degree murder conviction and death sentence. On appeal, this court affirmed the post-conviction court's denial of relief. *See Nichols v. State*, No. E1999-00562-CCA-R3-PC, 2001 WL 55747 (Tenn. Crim. App. Jan. 19, 2001), *perm. app. granted* (Tenn. July 2, 2001). In so doing, this court also ruled that the Petitioner "had no basis to refuse to answer the questions asked of him by the State during the hearing on his post-conviction petition." *Id.* at *16. On further review, the Tennessee Supreme Court affirmed the post-conviction court's denial of relief but ruled that this court erred by addressing the self-incrimination issue. *See Nichols v. State*, 90 S.W.3d 576, 607-08 (Tenn. Crim. App. 2002).

On June 26, 2024, the Petitioner filed the present motion to reopen his post-conviction petition. He argued that the United States Supreme Court's decision in *SFFA* announced a new constitutional rule that must be applied retroactively to his case. Relying on *SFFA*, the Petitioner contended that Tennessee's death-penalty scheme is unconstitutional because its proportionality review process requires the Tennessee Supreme Court to consider a defendant's race when determining whether a death sentence is excessive or disproportionate. According to the Petitioner, this race-based consideration cannot survive strict scrutiny and therefore violates the principles of equal protection and fundamental fairness guaranteed by the state and federal constitutions.

The State filed a response opposing the motion. It argued that the decision in *SFFA* was not applicable to Tennessee's comparative proportionality review because a defendant's race is one of many characteristics considered to ensure that a death sentence is not imposed in an arbitrary or capricious manner. In the State's view, the supreme court's consideration of race serves to guard against a jury impermissibly imposing a death sentence "due to" the defendant's race, unlike the race-based admissions policies promoting decisions based upon an applicant's race that were invalidated in *SFFA*.

After conducting a preliminary review of the pleadings and without holding an evidentiary hearing, the post-conviction court denied the Petitioner's motion to reopen. The court specifically found that the decision in *SFFA* did not announce a new constitutional rule but rather applied existing precedent to the cases before the court. The post-conviction court further determined that, even if *SFFA* had announced a new rule of constitutional law for Fourteenth Amendment analysis, such a rule would not invalidate Tennessee's proportionality review statute, which was designed to prevent the imposition of aberrant death sentences.

When a post-conviction court denies a motion to reopen, the petitioner may file an application in this court seeking permission to appeal. *See* Tenn. Code Ann. § 40-30-117(c). The application for permission to appeal must be filed within thirty days of the denial and "shall be accompanied by copies of all the documents filed by both parties in the trial court and the order denying the motion." *Id.* This court will grant an application for permission to appeal only if we conclude "that the trial court abused its discretion in denying the motion" to reopen. *Id.*

Upon our review of the record, we conclude that the Petitioner's application is timely and that the attachments thereto are sufficient for our review.

## ANALYSIS

The Tennessee Post-Conviction Procedure Act provides an avenue of relief "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. Post-conviction proceedings are thus designed to ensure the fundamental fairness of criminal judgments that have otherwise become final. At the same time, the legislature has narrowly circumscribed the availability of relief in order to promote finality and to prevent repetitive or piecemeal litigation.

For that reason, a petition for post-conviction relief must generally be filed within one year of either the appellate court's adjudication or the date the judgment becomes final. *Id.* § 40-30-102(a). Limited statutory exceptions apply—for example, where the claim relies on a new constitutional right or on newly discovered evidence of actual innocence. *Id.* § 40-30-102(b). In addition, a claim may be barred if it was previously determined or could have been raised earlier and therefore is deemed waived. *Id.* § 40-30-106(g), (h).

The Act also imposes a strict one-petition rule. Section 40-30-102(c) provides:

> This part contemplates the filing of only one (1) petition for post-conviction relief. In no event may more than one (1) petition for post-conviction relief be filed attacking a single judgment. If a prior petition has been filed which was resolved on the merits by a court of competent jurisdiction, any second or subsequent petition shall be summarily dismissed.

This rule serves to channel all constitutional challenges into a single, comprehensive proceeding. As a result, a petitioner may not file successive petitions merely to relitigate issues or to raise new theories that could have been advanced previously. *See, e.g.*, *Tut v. State*, No. M2023-01069-CCA-R3-PC, 2024 WL 752961, at *3 (Tenn. Crim. App. Feb. 23, 2024), *perm. app. denied* (Tenn. July 18, 2024).

## A. REOPENING POST-CONVICTION PROCEEDINGS

Recognizing that genuinely new constitutional developments may arise after a petitioner's first proceeding, the General Assembly created a narrow exception that permits a petitioner to move to "reopen" the original post-conviction case. *Abdur'Rahman v. State*, 648 S.W.3d 178, 193-94 (Tenn. Crim. App. 2020); *see also* Tenn. Code Ann. § 40-30-117. The reopening mechanism is not intended as a second appeal but as a limited safety valve for extraordinary circumstances. Accordingly, the statute restricts such motions to three specific categories:

(1) The claim in the motion is based upon a final ruling of an appellate court establishing a constitutional right that was not recognized as existing at the time of trial, if retrospective application of that right is required. The motion must be filed within one (1) year of the ruling of the highest state appellate court or the United States supreme court establishing a constitutional right that was not recognized as existing at the time of trial; or

- 4 -

(2) The claim in the motion is based upon new scientific evidence establishing that the petitioner is actually innocent of the offense or offenses for which the petitioner was convicted; or

(3) The claim asserted in the motion seeks relief from a sentence that was enhanced because of a previous conviction and the conviction in the case in which the claim is asserted was not a guilty plea with an agreed sentence, and the previous conviction has subsequently been held to be invalid, in which case the motion must be filed within one (1) year of the finality of the ruling holding the previous conviction to be invalid[.]

Tenn. Code Ann. § 40-30-117(a)(1)-(3); *see also Abdur'Rahman*, 648 S.W.3d at 194.

To obtain reopening, the petitioner must identify facts underlying the claim, that if true, "would establish by clear and convincing evidence that the petitioner is entitled to have the conviction set aside or the sentence reduced." Tenn. Code Ann. § 40-30-117(a)(4). The statutory design thus reflects a balance between the need for finality and the imperative to correct truly fundamental constitutional errors that could not have been raised earlier.

Here, the Petitioner relies on subsection (a)(1), asserting that the United States Supreme Court's decision in *Students for Fair Admissions* created a new constitutional rule that must be applied retroactively to invalidate his death sentence. *See* Tenn. Code Ann. § 40-30-117(a)(1). Whether a new rule qualifies for retroactive application is a question of law, which we review de novo. *Bush v. State*, 428 S.W.3d 1, 16 (Tenn. 2014); *State v. Minor*, 546 S.W.3d 59, 65 (Tenn. 2018).

## B.    TENNESSEE'S COMPARATIVE PROPORTIONALITY REVIEW

The Petitioner's claim focuses on the consideration of race in Tennessee's system of comparative proportionality review for death sentences. A brief explanation of that process is necessary to place his argument in context.

Under Tennessee Code Annotated section 39-13-206(a)(1), every death sentence receives automatic review by the Tennessee Supreme Court once the judgment becomes final in the trial court. As part of that review, the supreme court must determine whether:

(A)     The sentence of death was imposed in any arbitrary fashion;

(B)     The evidence supports the jury's finding of statutory aggravating circumstance or circumstances;

(C)     The evidence supports the jury's finding that the aggravating circumstance or circumstances outweigh any mitigating circumstances; and

(D)     The sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the nature of the crime and the defendant.

*Id.* § 39-13-206(c)(1)(A)-(D).

This fourth factor—comparative proportionality review—serves as an additional procedural safeguard against arbitrary sentencing. It is a statutory component of every capital case in Tennessee. Although neither the United States nor the Tennessee Constitutions require such review, *see State v. Bland*, 958 S.W.2d 651, 663 (Tenn. 1997), the General Assembly has chosen to include it as part of the appellate process to ensure consistency and fairness in capital sentencing. Where appellate review is statutorily conferred, the proceedings must nevertheless comport with constitutional guarantees of due process and equal protection. *State v. Gillespie*, 898 S.W.2d 738, 741 (Tenn. Crim. App. 1994) (citing *Evitts v. Lucey*, 469 U.S. 387, 394 (1983)).

Our supreme court has explained that the purpose of comparative proportionality review is "to eliminate the possibility that a person will be sentenced to death by the action of an aberrant jury and to guard against the capricious or random imposition of the death penalty." *Bland*, 958 S.W.2d at 665. To carry out that purpose, the court employs a "precedent-seeking approach," comparing the case before it to other cases in which the defendants were convicted of the same or similar crimes and examining "the facts of the crimes, the characteristics of the defendants, and the aggravating and mitigating [circumstances] involved." *Id.*

Among the defendant characteristics considered are age, race, gender, prior criminal activity, mental or physical condition, degree of participation, remorse, and potential for rehabilitation. *Id.* at 667. The supreme court has clarified that race is included in this

analysis only for the purpose of preventing, not promoting, racial discrimination: it is considered "to ensure that an aberrant death sentence [i]s not imposed due to the defendant's race." *State v. Chalmers*, 28 S.W.3d 913, 920 (Tenn. 2000); *cf. State v. Pike*, 978 S.W.2d 904, 919 (Tenn. 1998).

### C. APPLICATION TO THE PETITIONER'S MOTION TO REOPEN

The Petitioner contends that *Students for Fair Admissions* announced a new rule of constitutional law prohibiting any governmental consideration of race, even for ostensibly benign purposes. He argues that because Tennessee's comparative proportionality review includes the defendant's race as one of several factors examined in capital cases, the procedure now violates the Equal Protection Clause as construed in *SFFA*. According to the Petitioner, the Supreme Court's reasoning—that any race-conscious decision-making is inherently suspect and must have a defined endpoint—renders Tennessee's proportionality framework unconstitutional and requires that his death sentence be vacated. He further asserts that *SFFA* must be applied retroactively because it announced a substantive change in constitutional law, thereby entitling him to reopen his post-conviction proceedings under Tennessee Code Annotated section 40-30-117(a)(1).

The State responds that the Petitioner misreads *SFFA* and misconstrues Tennessee's proportionality review. It argues that *SFFA* did not announce a new constitutional rule but merely applied long-standing Equal Protection principles to a specific context—race-based university admissions. According to the State, Tennessee's proportionality review does not employ race as a classification or decision-making criterion but rather considers it to prevent racial bias in sentencing. The State further contends that, even if *SFFA* were deemed to announce a new rule, it is not a rule of constitutional criminal law subject to retroactive application under Tennessee Code Annotated sections 40-30-117 and 40-30-122. Finally, the State maintains that applying *SFFA* to Tennessee's capital sentencing procedures would not alter the outcome of the Petitioner's case because the limited consideration of race in proportionality review serves a protective—not discriminatory—function. We agree with the State.

### 1. Whether *SFFA* Announced a New Rule

To address the Petitioner's arguments, it is important to first review *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181 (2023). In *SFFA*, the United States Supreme Court examined whether race-based admissions

programs at Harvard College and the University of North Carolina complied with the Equal Protection Clause of the Fourteenth Amendment. Applying strict scrutiny, the Court reiterated that any racial classification must further a compelling governmental interest and be narrowly tailored to achieve that interest. *Id.* at 207 (quoting *Grutter v. Bollinger*, 539 U.S. 306, 326 (2003); *Fisher v. Univ. of Tex.*, 570 U.S. 297, 311-12 (2013)).

The Court concluded that the universities' asserted goals—such as promoting diversity and cross-racial understanding—were "not sufficiently coherent for purposes of strict scrutiny," that the programs "unavoidably employ race in a negative manner" and risked stereotyping, and that the policies "lack[ed] a logical end point." *Id.* at 214, 219-21. The Court held that the programs violated the Equal Protection Clause because they "lack sufficiently focused and measurable objectives warranting the use of race" and "unavoidably employ race in a negative manner." *Id.* at 230. It concluded emphatically: "We have never permitted admissions programs to work in that way, and we will not do so today." *Id.*

The post-conviction court determined that *SFFA* did not create a new rule of constitutional law, reasoning that the decision simply applied existing Equal Protection principles to a new factual context. The court noted:

> The United States Supreme Court's own language [in *SFFA*] belies Petitioner's claim of a new rule. As stated above, the Court, in finding the college admissions programs violative of the Equal Protection Clause, stated, "[W]e have been unmistakenly clear that any deference must exist 'within constitutionally prescribed limits,' and that 'deference does not imply abandonment or abdication of judicial review.'" *SFFA*, 600 U.S. at 217 (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). The Court also stated, "We have never permitted admissions programs to work in that way, and we will not do so today." *Id.*

We agree with the post-conviction court's reasoning. Far from announcing a novel constitutional principle, *SFFA* reaffirmed the long-standing rule that racial classifications are inherently suspect and permissible only within the narrow confines of strict scrutiny. The Court's own summary underscores that continuity: "We have permitted race-based admissions only within the confines of narrow restrictions. University programs must comply with strict scrutiny, they may never use race as a stereotype or negative, and—at some point—they must end." *SFFA*, 600 U.S. at 213. Accordingly, we conclude that *SFFA* represents the application of established Equal Protection doctrine rather than the

creation of a new rule of constitutional law.   *See, e.g.*, *Suttles v. State*, No. E2017-00840-CCA-R28-PD, at \*3 (Tenn. Crim. App. Sept. 18, 2017) (Order) (holding that *Hurst v. Florida*, 577 U.S. 92 (2016), was derivative of *Apprendi* and *Ring*), *perm. app. denied* (Tenn. Jan. 18, 2018).

## 2.    Retroactivity Under Section 40-30-122

Even assuming that *SFFA* could be characterized as announcing a new constitutional rule, it would not qualify for retroactive application in post-conviction proceedings.   The question of whether a new constitutional rule applies retroactively is governed by the Post-Conviction Procedure Act, not by other doctrines.   *See Bush*, 428 S.W.3d at 16.   Under the Act,

> A new rule of constitutional criminal law shall not be applied retroactively in a post-conviction proceeding unless the new rule places primary, private individual conduct beyond the power of the criminal law-making authority to proscribe or requires the observance of fairness safeguards that are implicit in the concept of ordered liberty.

Tenn. Code Ann. § 40-30-122.

Accordingly, *SFFA* could be applied retroactively only if its holding (1) places primary, private individual conduct beyond the power of the State to punish, or (2) requires the observance of fairness safeguards implicit in ordered liberty.   We consider each ground in turn.

### a.    Whether *SFFA* Places Private Conduct Beyond the State's Power to Punish

The first inquiry concerns whether *SFFA* limits the State's substantive power to criminalize or punish conduct.   Substantive rules "place particular conduct or persons covered by the statute beyond the State's power to punish," whereas procedural rules regulate only the manner of determining culpability.   *See Schriro v. Summerlin*, 542 U.S. 348, 352 (2004).   In other words, this inquiry asks whether a defendant "stands convicted of an act that the law does not make criminal" or faces "a punishment that the law cannot impose upon him."   *Id.*; *see also Jones v. United States*, 689 F.3d 621, 626 (6th Cir. 2012)

(observing that substantive rules may also alter the permissible punishment for certain categories of defendants).

In *Bush v. State*, our supreme court explained that this exception focuses on the State's substantive authority to punish private conduct. *See Bush*, 428 S.W.3d at 19. As examples, the court cited *Lawrence v. Texas*, 539 U.S. 558 (2003), which held that states could not criminalize private consensual sexual conduct, and *Roe v. Wade*, 410 U.S. 113 (1973), which restricted the criminal prosecution of physicians performing early-term abortions. *See also Harshaw v. State*, No. E2015-00900-CCA-R3-PC, 2017 WL 1103048, at *12 (Tenn. Crim. App. Mar. 24, 2017) (recognizing that a rule barring punishment for gang affiliation would be substantive and retroactive), *no perm. app. filed*.

The holding in *SFFA* does not implicate the State's substantive power to punish. The case addressed race-conscious university admissions policies, not criminal statutes or sentencing authority. *SFFA* neither altered the range of conduct subject to punishment under Tennessee law nor changed the class of persons eligible to receive particular penalties. *See Schriro*, 542 U.S. at 353. Because *SFFA* concerns administrative admissions criteria rather than the State's criminal jurisdiction, it does not meet the first condition for retroactivity under Tennessee Code Annotated section 40-30-122.

### b. Whether *SFFA* Requires Fairness Safeguards Implicit in Ordered Liberty

The second inquiry asks whether *SFFA* requires the observance of fairness safeguards that are implicit in the concept of ordered liberty. *See* Tenn. Code Ann. § 40-30-122. In *Bush*, the Tennessee Supreme Court held that this statutory phrase parallels the standard announced in *Teague v. Lane*, 489 U.S. 288 (1989), and allows retroactive application only for (1) "watershed rules of criminal procedure," or (2) procedures "without which the likelihood of an accurate conviction is seriously diminished." *Bush*, 428 S.W.3d at 19-20.[1]

---

[1] Although the *Bush* Court held that it was adopting this two-pronged standard from *Teague*, it is admittedly not clear that *Teague* itself considered these concepts to be separate and independent grounds for analysis. Rather, since *Teague*, the United States Supreme Court has seemingly made clear that the real issue is a single one: whether the new rule is itself a "watershed rule" of criminal procedure. *See Whorton v. Bockting*, 549 U.S. 406, 418 (2007). This single issue, in turn, is resolved by considering whether the new rule is both (1) necessary to prevent "an impermissibly large risk of an inaccurate

Neither condition is satisfied here. The *SFFA* decision does not implicate the accuracy of criminal convictions or the protection of the innocent. Its Equal Protection analysis governs the use of race in educational admissions—not procedural mechanisms that ensure reliable criminal verdicts. Thus, failing to apply *SFFA* retroactively does not increase "the likelihood of an inaccurate conviction." *See Rice v. State*, No. W2025-00088-CCA-R28-PD, slip op. at 6 (Tenn. Crim. App. Apr. 29, 2025), *perm. app. denied* (Tenn. Sept. 10, 2025).

Nor does *SFFA* establish a watershed rule of criminal procedure. The United States Supreme Court has expressly eliminated the "watershed rule" exception from its retroactivity framework. *See Edwards v. Vannoy*, 593 U.S. 255, 272 (2021). Although our supreme court has not yet addressed that change, this court remains bound by *Bush*'s interpretation of Tennessee Code Annotated section 40-30-122. Even under that framework, *SFFA* plainly does not articulate a new rule of criminal procedure—let alone one of "watershed" importance. *See Rice*, No. W2025-00088-CCA-R28-PD, slip op. at 5 ("The holding in *SFFA* is not a new rule of constitutional criminal law.").

Accordingly, *SFFA* does not qualify for retroactive application under either prong of the retroactivity standard established in *Bush* and codified in Tennessee Code Annotated section 40-30-122.

### 3.      Application to Comparative Proportionality Review

Even assuming *SFFA* applied, the Petitioner would not be entitled to relief. The limited consideration of race in Tennessee's comparative proportionality review serves a fundamentally different—and constitutionally permissible—purpose from the race-based admissions programs struck down in *SFFA*. As the federal courts have recognized, "the mere consideration of race as a factor to determine the proportionality of [a defendant's] sentence to sentences in similar case[s] is not discriminatory." *Hugueley v. Westbrooks*,

---

conviction"; and (2) "alter[s] our understanding of the bedrock procedural elements essential to the fairness of a proceeding." *Id.*

Nevertheless, even assuming that some discrepancy *may* exist between the interpretation of *Teague* in the federal and Tennessee courts, the role of this Court is not to develop the law as it sees it. Rather, our supreme court is the supreme judicial tribunal of the state, and all other courts are constitutionally inferior tribunals subject to its actions. *See Barger v. Brock*, 535 S.W.2d 337, 340 (Tenn. 1976). As an inferior court, this court must abide by the decisions of the supreme court, *State v. Davis*, 654 S.W.2d 688, 690 (Tenn. Crim. App. 1983), and consequently, we follow the principles set forth in *Bush*.

No. 09-1181-JDB-EGB, 2017 WL 3325008, at *56 (W.D. Tenn. Aug. 3, 2017), *aff'd sub nom. Hugueley v. Mays*, 964 F.3d 489 (6th Cir. 2020).

Unlike the universities' affirmative-action programs, Tennessee's appellate review does not assign a "plus" or "minus" value to race, nor does it employ racial categories to create preference or stereotype. *Rice v. State*, No. W2025-00088-CCA-R28-PD, slip op. at 6 (citing *SFFA*, 600 U.S. at 218). Rather, race is considered only "to ensure that an aberrant death sentence was not imposed due to the defendant's race." *State v. Chalmers*, 28 S.W.3d 913, 920 (Tenn. 2000). The inclusion of race in this narrow, protective manner therefore advances—rather than undermines—the constitutional prohibition on racial discrimination.

Moreover, Tennessee's capital sentencing framework as a whole provides multiple procedural safeguards against arbitrary or discriminatory imposition of the death penalty. Comparative proportionality review is only one of several mechanisms that promote fairness and consistency. As the Tennessee Supreme Court has explained,

> [Comparative proportionality review] is not the sole method by which [the appellate courts] determine that a death sentence has been randomly or arbitrarily imposed. Indeed, the entire system of capital punishment in Tennessee is composed of extensive procedures which work to eliminate arbitrary imposition of death by ensuring that the sentencing authority is given sufficient information and guidance in making its decision.

*State v. Keen*, 31 S.W.3d 196, 223 (Tenn. 2000). The supreme court's experience bears out that conclusion: only one death sentence has ever been overturned on proportionality grounds, "an indication that our capital sentencing scheme is functioning properly." *State v. Godsey*, 60 S.W.3d 759, 783 (Tenn. 2001).

Accordingly, even if *SFFA* were applied to Tennessee's framework, the Petitioner has not shown that his sentence was imposed in a manner inconsistent with the Equal Protection Clause or that reopening post-conviction proceedings is warranted.

**CONCLUSION**

In summary, we conclude the post-conviction court did not abuse its discretion in denying the Petitioner's motion to reopen his post-conviction petition. As such, the application for permission to appeal is respectfully denied.

Because the Petitioner is indigent, the costs of this proceeding are taxed to the State of Tennessee.

JUDGE TOM GREENHOLTZ
JUDGE KYLE A. HIXSON
JUDGE STEVEN W. SWORD